NUMBER 13-01-668-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

                                                                                                                     


 

LEONARD
PERRY HAMMONS,                                                     Appellant,

 

                                                             v.

 

THE
STATE OF TEXAS,                                                                  Appellee.

                                                                                                                                      


      On appeal
from the 36th District Court of Aransas County, Texas.

                                                                                                                     


 

                               MEMORANDUM
OPINION

 

                       Before
Justices Yañez, Rodriguez, and Garza

                            Memorandum
Opinion by Justice Yañez

 

 








A jury found appellant, Leonard Perry Hammons,
guilty of aggravated robbery.[1]  The trial court assessed his punishment at
sixty-five years= imprisonment and a $10,000.00 fine.  In four issues, appellant contends (1) the
trial court erred in failing to make and file findings of fact and conclusions
of law concerning the voluntariness of appellant=s
written confession (issue one); (2) the trial court erred in denying his motion
to suppress his confession because it was obtained (a) after he invoked his
right to counsel (issue two) and (b) as a result of threats and a promised
benefit (issue three); and (3) the evidence is legally insufficient to support
the jury=s finding that the knife used in the robbery
qualified as a deadly weapon (issue four). 
We affirm. 

As this is a memorandum opinion and the parties are
familiar with the facts, we will not recite them here except as necessary to
advise the parties of the Court=s decision and the basic reasons for it.[2]

The record contains the trial court=s certification that this Ais not a plea-bargain case, and the defendant has
the right of appeal.@[3]

                                       Findings
of Fact and Conclusions of Law








In his first issue, appellant contends the trial
court erred by failing to make and file written findings of fact and
conclusions of law regarding the voluntariness of his confession.  On August 31, 2004, we abated appellant=s appeal and remanded the cause to the trial judge
for compliance with article 38.22, section 6 of the code of criminal procedure.[4]  On September 3, 2004, the trial court filed
written findings of fact and conclusions of law regarding the voluntariness of
appellant=s confession. 
The trial court=s findings and conclusions were provided to this
Court by means of a supplemental clerk=s record on September 9, 2004.  Accordingly, appellant=s first issue is moot. 

                                                            Motion
to Suppress

 In his second
and third issues, appellant contends the trial court erred in denying his
motion to suppress his confession because it was obtained (a) after he invoked
his right to counsel (issue two) and (b) as a result of threats and a promised
benefit (issue three). 








A trial court's ruling on a motion to suppress is
generally reviewed for abuse of discretion.[5]  In a suppression hearing, the trial judge is
the sole trier of fact and judge of the credibility of
the witnesses and the weight to be given to their testimony.[6]  In reviewing a trial court's ruling on a
motion to suppress, we afford almost total deference to the trial court's
determination of the historical facts that the record supports, especially when
the trial court's findings turn on evaluating a witness's credibility and
demeanor.[7]  We afford the same amount of deference to the
trial court's rulings on Aapplication of law to fact questions,@ also known as Amixed questions of law and fact,@ if the resolution of those ultimate questions turns
on an evaluation of credibility and demeanor.[8]  However, we review de novo questions
of law and Amixed questions of law and fact@ that do not turn on an evaluation of credibility and
demeanor.[9]  We
uphold a trial court=s ruling on a suppression motion if it is reasonably
supported by the record and is correct on any theory of law applicable to the
case.[10]

The determination of whether a statement is voluntary,
which is the issue in this case, is a mixed question of law and fact which
turns on the credibility of the witnesses.[11]  Accordingly, the trial court's determination
should be granted almost total deference on appeal.[12]


In its findings of fact and conclusions of law, the
trial court found appellant was given Miranda[13]
warnings and waived his rights prior to giving each of his written
statements.[14]  The court concluded that appellant knowingly
and voluntarily waived his rights and made the statements and that the
statements were not the result of any inducement, threat or promise.  

 








In his second issue, appellant contends the trial
court erred in failing to suppress his written statement because it was Aobtained by interrogation after he had requested in
writing to speak to an attorney.@  At a May 29,
2001 hearing on appellant=s motion to suppress, the evidence concerning
appellant=s request for an attorney was conflicting.  In support of his argument that his November
27, 2000 statement[15]
was obtained after he had requested an attorney, appellant introduced into
evidence a hand-written general request form, signed by appellant and dated
November 27, 2000, in which appellant wrote, AI
would like a [sic] Attorney as soon as it can be done.  Thank you for your time.@  In the AAction Taken@ portion of the form, an officer made the notation, APlease fill out Attny request form.@  The officer=s signature is dated A11-28-00  06:14.@  At the
suppression hearing, appellant testified that he submitted his written request
for an attorney on the morning of November 27th, before the investigating
officer, Jerry Lawing, came to the jail to talk to him and before he gave his
statement later that day.  Appellant also
testified that when he gave his statement on November 27th, he told Officer
Lawing he had requested an attorney, but claimed  the officer nonetheless continued to ask him
questions.

In contrast, Officer Lawing testified that when
appellant was brought to his office on the afternoon of November 27th, he again
advised appellant of his Miranda rights, including his right to have an
attorney present during questioning. 
Officer Lawing also testified that (1) appellant did not ask for an
attorney at any time before or during the interview on November 27th; (2) prior
to the interview, Lawing directly asked appellant if he wanted an attorney and
appellant said he did not; and (3) when Lawing took appellant=s statement, he was unaware appellant had requested
an attorney.








Appellant contends his written statement is
inadmissible because it Awas obtained by interrogation after he had requested
in writing to speak to an attorney.@[16]  Citing Edwards
v. Arizona, 451 U.S. 477, 484-85 (1988), appellant argues his written
waiver of  rights is invalid because
after he invoked his right to counsel, the police were prohibited from
questioning him unless he initiated the contact with the police and it is
undisputed that the police initiated the contact that resulted in the
statement.  

The State responds that because the request form
does not reflect what time  it was
submitted and it was signed by a jailer on November 28th, it can be inferred
that the request was not completed until some time on November 28th.  The State also argues that appellant=s written request was not a valid invocation of his
Fifth Amendment right to counsel because such a request must be, Aat a minimum, some statement that can reasonably be
construed to be an expression of a desire for the assistance of an attorney in
dealing with custodial interrogation by the police.@[17]  








As noted, the trial court expressly found that prior
to making his statement on November 27th, appellant knowingly and voluntarily
waived his rights.  The trial court is
the sole trier of fact and judge of the weight and credibility of the evidence.[18]  The trial court could have determined that
appellant voluntarily gave his statement prior to requesting an attorney or
that he voluntarily withdrew his request when he was interviewed by Officer
Lawing.[19]  The testimony of Officer Lawing supports the
trial court=s findings.[20]  We hold the trial court did not abuse its
discretion in denying appellant=s motion to suppress based on his claim that his
statement was obtained after he requested an attorney.[21]  We overrule appellant=s second issue.

In his third issue, appellant contends his written
statement is inadmissible because it was obtained as a result of threats and a
promised benefit.  At the suppression
hearing, appellant testified he gave his statement in exchange for Officer
Lawing=s promise that he would receive a sentence of only
twenty years.  He testified he would never have signed the
statement if he had not been promised a twenty-year sentence. 

Officer Lawing testified that although he informed
appellant of the range of punishment for habitual offenders, he did not promise
appellant a twenty-year sentence if he confessed.  The trial court found that the statement was
made voluntarily and was not the product of inducement, threat, or
promise.  Officer Lawing=s testimony supports the trial court=s findings.[22]  We hold the trial court did not abuse its
discretion in denying appellant=s motion to suppress based on his claim that his
statement was obtained as a result of threats and a promised benefit.[23]  We overrule appellant=s third issue.     


                            Sufficiency
of Evidence of Knife as a Deadly Weapon








In his fourth issue, appellant contends the evidence
is legally insufficient to support the jury=s
finding that the knife allegedly used in the robbery was a deadly weapon.  Specifically, appellant argues that the knife
used in the robbery was not introduced at trial and that the evidence is
therefore insufficient to prove that a deadly weapon was used. 

In a legal sufficiency review, we view all of the
evidence in the light most favorable to the verdict and then determine whether
a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.[24]  This standard gives Afull play to the responsibility of the trier of fact
fairly to resolve conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.@[25] 

We measure the legal sufficiency of the evidence
against the elements of the offense as defined by a hypothetically correct jury
charge for the case.[26]  ASuch a charge would be one that accurately sets out
the law, is authorized by the indictment, does not unnecessarily increase the
State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the
defendant was tried.@[27]








The jury, as the trier of fact, may use common sense
and apply common knowledge, observation, and experience gained in ordinary
affairs when giving effect to the inferences that may be reasonably drawn from
the evidence.[28]  As fact finder, the jury is the exclusive
judge of the credibility of witnesses and the weight to be afforded their
testimony.[29]  The jury is free to accept one version of the
facts, reject another, or reject all or any of a witness's testimony.[30]

The Texas Penal Code defines a deadly weapon as Aanything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.@[31]  Knives are
not deadly weapons per se, and the State carries the burden of proving a
knife used in an offense was a deadly weapon.[32]








In determining whether a knife is a deadly weapon, a
jury may consider all the facts of a case, including: (1) words spoken by the
appellant; (2) appellant's threats and gestures; (3) whether appellant
inflicted any injuries; (4) physical proximity of the parties; (5) size, shape,
and sharpness of the knife; (6) manner of its use or intended use; and (7) its
capacity to cause serious bodily injury or death.[33]  No single factor is determinative.[34]  The jury may determine a weapon is deadly
even if the weapon is not in evidence.[35]  In reviewing the record, we consider whether
a rational trier of fact could find beyond a reasonable doubtB based on the testimony and evidenceBthat the manner in which appellant used the knife,
or intended to use the knife, was capable of causing death or serious bodily
injury.[36]


Here, the victim testified that appellant displayed
a knife that Ahad a white handle, like ivory color, a long blade
and a point to it, about twelve inches long.@  The victim testified that appellant put the
knife up to her chin and neck area and said, AI
haven=t hurt you yet, but I will kill you if I have to.@  At trial,
the victim identified a knife as being Asubstantially similar@ to
the knife used by appellant. She also testified that appellant waved the knife
around and that she was afraid he would kill her and her two small
children.  We conclude that there was
sufficient evidence for a jury to find that the manner of the knife=s  use or
intended use was capable of causing death or serious injury.[37]  We overrule appellant=s fourth issue.

We affirm the trial court=s judgment.  

 

                                                                    
                                                             

LINDA REYNA YAÑEZ

Justice

 

 

 

Do
not publish.  Tex. R. App. P. 47.2(b).

 

Memorandum
opinion delivered and filed this 

the
21st day of September, 2005.

  

 











[1] See Tex. Pen. Code Ann. ' 29.03 (Vernon 2003). 
Appellant was also charged with aggravated sexual assault, but the jury
found him not guilty of that offense.  





[2] Tex.
R. App. P. 47.4.





[3] 
See Tex. R. App. P. 25.2(a)(2).





[4] See Tex. Code Crim. Proc. Ann. art. 38.22, ' 6 (Vernon 2005); Urias v. State,
155 S.W.3d 141, 142 (Tex. 2004) (holding that where trial court fails to issue
requisite findings of fact and conclusions of law pursuant to article 38.22,
section 6, proper procedure is to remand for compliance with statute). 





[5] See Ford v. State, 26 S.W.3d 669, 672 (Tex. App.BCorpus Christi 2000, no pet.) (citing
Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999)).





[6] State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 





[7] State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 





[8] Ross, 32 S.W.3d at 856; Guzman,
955 S.W.2d. at 89. 





[9] Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d. at 89. 





[10] Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996).





[11] See Garcia v. State,
15 S.W.3d 533, 535 (Tex. Crim. App. 2000). 





[12] Id.; see Chavero v.
State, 36 S.W.3d 688, 697 (Tex. App.BCorpus Christi 2001, no pet.) (holding where evidence
concerning appellant=s possible invocation of right to
counsel was conflicting, requiring evaluation of witnesses= credibility and demeanor,
appellate court reviews suppression issues under an abuse of discretion
standard, and must defer to trial court=s findings that are supported by the record).  





[13] See Miranda v. Arizona, 384
U.S. 436, 467-68 (1966).





[14] Appellant gave three written
statements:  two on November 21, 2000
(State=s Exhibits AA@ and AB@ involving  two other robberies) and one on November 27,
2000 (State=s Exhibit AC@). 
At issue in this appeal is appellant=s November 27, 2000 statement.





[15] Appellant=s November 27, 2000 statement
reflects it was taken at 3:00 p.m. 





[16] Although appellant cites neither
the Fifth nor Sixth Amendment to the United States Constitution, we construe
his argument as an alleged Fifth Amendment violation because he argues his
statement was obtained after he had requested an attorney.  In support of his argument, appellant cites Edwards
v. Arizona, 451 U.S. 477, 484-85 (1988). 
In Edwards, the U.S. Supreme Court held that once a suspect
invokes his Fifth Amendment right to counsel, he cannot be further interrogated
by the police until counsel has been provided, or the suspect himself initiates
further communication with the police.  See
id.

 

An accused=s Sixth Amendment right to counsel
attaches at the initiation of adversarial proceedings, whether by way of formal
charge, preliminary hearing, indictment, information, or arraignment, and no
request for counsel need be made by the accused.  See Chavero, 36 S.W.3d at 697.  When an indictment occurs prior to
arraignment or any other legal proceeding, the Sixth Amendment right to counsel
does not attach before indictment.  See
id.  Here, appellant had been in custody
since his arrest on November 21, 2000. 
He was not indicted for the present offenses until February 21,
2001.  Accordingly, we conclude no Sixth
Amendment claim is implicated.     





[17] McNeil v. Wisconsin, 501 U.S. 171, 178 (1991)
(emphasis in original).





[18] 
See Ballard, 987 S.W.2d at 891. 






[19] See Brownlee v. State, 944
S.W.2d 463, 466 (Tex. App.BHouston [14th Dist.] 1997, pet. ref=d) (holding appellant voluntarily
withdrew request for attorney where, during taping of confession, he was asked
and expressly stated he did not want a lawyer). 






[20] See Ballard, 987 S.W.2d at
891. 





[21] See Ford, 26 S.W.3d
at 672. 





[22] See Ballard, 987 S.W.2d at
891.





[23] See Ford, 26 S.W.3d
at 672. 





[24] Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443
U.S. 307, 319 (1979)). 





[25] Jackson, 443 U.S. at 319.





[26] Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.BCorpus Christi 2002, pet. ref'd).





[27] Malik, 953 S.W.2d at 240. 





[28] Booker v. State, 929 S.W.2d
57, 60 (Tex. App.BBeaumont 1996, pet. ref'd). 





[29] Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1981); Chambers v. State,
805 S.W.2d 459, 461 (Tex. Crim. App. 1991). 





[30] Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim.
App. 1981). 





[31] Tex.
Pen. Code Ann. ' 1.07(a)(17)(B) (Vernon 2004).





[32] Tisdale v. State, 686
S.W.2d 110, 111 (Tex. Crim. App. 1984).





[33] Brown v. State, 716 S.W.2d
939, 946‑47 (Tex. Crim. App. 1986). 





[34] Bailey v. State, 46 S.W.3d
487, 491 (Tex. App.BCorpus Christi 2001, pet. ref'd). 





[35] Brown, 716 S.W.2d at 946; Bailey,
46 S.W.3d at 492. 





[36] Tex.
Pen. Code Ann. ' 1.07(a)(17)(B) (Vernon 2004); Tisdale,
686 S.W.2d at 114.





[37] See Tex. Pen. Code Ann. ' 1.07(a)(17)(B) (Vernon 2004); Tisdale, 686 S.W.2d
at 114.