**Mark Wilson GLAZNER, Appellant**

v.

**The STATE of Texas.**

**No. PD–0998–04.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 19, 2005.

R. Scott Shearer, Houston, for Appellant.

Peyton Z. Peebles III, Asst. Dist. Atty., Houston for State.

## OPINION

JOHNSON, J., delivered the opinion of the Court, in which KELLER, P.J., PRICE, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined.

While on routine patrol, Harris County Sheriff's Deputy Lee Martin noticed that appellant was operating a motor vehicle on a public road with expired registration, in violation of TEX. TRANSP.CODE § 502.002(a)(1). Failure to properly register a motor vehicle is a misdemeanor of-

fense punishable by fine. TEX. TRANSP. CODE § 502.401(c). When appellant stopped at a convenience store, Deputy Martin also stopped. When appellant returned to his truck, Deputy Martin approached appellant, advised him that his registration was expired, and asked him for his driver's license and proof of insurance. Appellant produced a valid license but, in violation of TEX. TRANSP. CODE § 601.071, he did not have liability insurance. Failure to maintain the minimum amount of liability insurance is a misdemeanor offense punishable by fine, confinement in county jail, or both. TEX. TRANSP. CODE § 601.008.

During their conversation, Deputy Martin noticed a clip on appellant's pocket that he suspected was connected to a knife and so he conducted a pat-down search of appellant for safety purposes. The clip was, in fact, connected to a pocket knife, but no other weapons were discovered. After taking possession of appellant's pocket knife, which was of legal length, Deputy Martin opened the door of appellant's truck and put the knife on the front seat. He testified that it was his habit to do so to keep all weapons away from a detainee during a stop and to ensure that any property that was temporarily seized during an encounter was returned to the detainee when the detention ended. He further testified that opening the door was not an effort to detect criminal activity.

When Deputy Martin opened the door, he smelled a strong odor of marijuana. Deputy Martin then asked appellant whether there was any more marijuana in the truck, and appellant admitted that there were "roaches in the ashtray." Dep-

uty Martin then searched the passenger compartment of appellant's truck, saw the roaches in the ashtray, and discovered additional marijuana in the console and on the floor. Following standard department procedure, he then handcuffed appellant and placed him in the back seat of the patrol car before collecting the evidence.

Appellant plead guilty to misdemeanor possession of marijuana pursuant to a plea agreement, but appealed the trial court's denial of his motion to suppress evidence. Applying the rationale outlined in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and *Carmouche v. State*, 10 S.W.3d 323 (Tex.Crim.App.2000), the court of appeals held that Deputy Martin acted reasonably based on the facts known to him at the time he conducted the warrantless search and affirmed the judgment and sentence. *Glazner v. State*, No. 01-03-00396-CR, 2004 WL 1172081 (Tex. App.-Houston [1st Dist.], delivered May 27, 2004, unpublished). Appellant petitioned this Court for discretionary review. We granted review on two grounds.[1] We affirm.

## LEGALITY OF SEARCH OF APPELLANT'S PERSON

■ Appellant contends in his first ground for review that Deputy Martin lacked the level of suspicion necessary to justify a protective search of appellant's truck in light of *Long*. Appellant does not directly challenge the action of Deputy Martin in removing the pocket knife, but his brief characterizes the search which produced the knife as illegal and argues that opening the truck door to deposit the

---

1. (1) "Whether an officer's discovery of a legal pocket knife during a patdown search justifies a protective search of the suspect's vehicle pursuant to *Michigan v. Long* in the absence of any other specific or articulable

facts;" (2) "Whether the Court of Appeals failed to apply the appropriate standard to review appellant's Fourth Amendment suppression issue."

knife constituted an illegal search that violated appellant's expectation of privacy in the truck's interior. Although appellant characterizes the search of his truck as "protective" and invokes *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the record shows that this was not a *Terry* stop or search. Unlike the police officer in *Terry*, Deputy Martin had probable cause to arrest appellant for violations of the transportation code before he conducted the search of appellant's person, and the search of the truck followed an admission by appellant that there was contraband in it. While *Terry* does not apply directly, it is instructive in considering the merits of appellant's complaints. Although appellant challenges only the search of his truck, we address the search of his person because it led to the challenged search.

■ In *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the United States Supreme Court held that an officer has the authority, even in the absence of suspicion, to ask general questions of a subject. Although the line of questioning must be reasonably related to the purpose of the contact, a police officer is permitted to broaden the line of questioning beyond the scope of the original subject matter if he or she notices additional suspicious factors. *United States v. Sharpe*, 470 U.S. 675, 687, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

■ A pat-down search is permitted if the police officer can "point to specific and articulable facts, which, taken with rational inferences from those facts, reasonably warrant the intrusion." *O'Hara v. State*, 27 S.W.3d 548, 550–51 (Tex.Crim.App.2000)(quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). Moreover,

there is no requirement that a police officer feel personally threatened or be "absolutely certain" that the suspect is armed in order to conduct a pat-down search. *Id.* at 551. *See also Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)(subject stopped for traffic violations and ordered out of car; police frisked driver after seeing a large bulge under driver's jacket). "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his or her safety or that of others was in danger." *Terry* at 27, 88 S.Ct. 1868.

Deputy Martin indicated that he did not immediately perceive appellant to be a threat,[2] but that he believed, based on observation and experience, that appellant had a knife. The pat-down search in this case was justified because Deputy Martin reasonably concluded that appellant might be armed.

## LEGALITY OF SEARCH OF APPELLANT'S VEHICLE

■ Appellant places significant weight on the sequence of events during this encounter and whether Deputy Martin patted appellant down before opening the truck door. However, it is not relevant whether the search of the truck occurred before or after appellant's arrest, as long as probable cause existed before the search. "Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." *Thornton v. United States*, 541 U.S. 615, 623, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004). *See also State v. Ballard*, 987 S.W.2d 889, 892 (Tex.Crim.App.1999).

---

2. Deputy Martin admitted upon further questioning that, while he did not feel threatened by appellant at the outset of the encounter, he was uncertain of appellant's intentions because "I just met the guy."

The record indicates that Deputy Martin had probable cause to arrest appellant for traffic violations before searching either the appellant or his truck. He testified that his intent in opening the truck door was not to engage in a prohibited fishing expedition to uncover additional criminal activity, but only to place the knife in the front seat away from appellant.[3] When Deputy Martin opened the door of appellant's truck and smelled marijuana, he acquired reasonable suspicion to continue detaining appellant because he, at that point, reasonably believed that appellant was or had been engaged in criminal activity. *Davis*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997)(citing *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App. 1991)). Deputy Martin's actions were consistent with an investigatory encounter and were justified by reasonable and articulable suspicion. Appellant's admission that there was a prohibited substance in the truck created a separate justification for a search of it.

We find that the initial entry by Deputy Martin into appellant's truck was not a search and that the subsequent search of appellant's truck was supported by probable cause and was proper. We overrule appellant's first ground for review.

## STANDARD OF REVIEW

■ Appellant contends in his second ground for review that the court of appeals applied an incorrect standard when it reviewed appellant's claim that the marijuana was seized during an illegal search that violated the protections of the Fourth Amendment to the United States Constitution.

■ The Fourth Amendment is not designed to prevent all contact between citizens and police officers or all searches; it is meant to "prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."[4] That is, it is designed to protect citizens, not from all governmental intrusion, but from *unreasonable* governmental intrusion. *Terry* at 9, 88 S.Ct. 1868 (emphasis added). Under *Terry*, a search is reasonable if (1) the police officer's action was justified at its inception and (2) was reasonably related to the circumstances that justified the interference in the first place. *Terry* at 19–20, 88 S.Ct. 1868.

The court of appeals stated that "an officer may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that a suspect is armed and dangerous." *Glazner*, 2004 WL 1172081 at *2. This standard comports with *Terry* and *Thornton*. The court of appeals then evaluated Deputy Martin's actions using this objective standard and concluded that he was justified in disarming appellant for safety reasons and that the subsequent truck search "was not beyond the scope of the investigative stop." *Id.* at *2.

The court of appeals used the correct standard and applied it properly. We

---

**3.** Appellant also refers this Court to a video surveillance tape from the convenience store in support of the alleged constitutional violations. Appellant introduced this tape at the suppression hearing as evidence that Deputy Martin initiated the patdown search only after opening the truck door. The state raised no objection. This Court viewed the surveillance video and was unable to discern anything due to the poor quality of the tape.

**4.** *United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (citing *United States v. Martinez–Fuerte*, 428 U.S. 543, 554, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)).

overrule appellant's second ground for review.

We affirm the judgment of the court of appeals.

WOMACK, J., concurred.

MEYERS, J., dissented.

MEYERS, J., filed a dissenting opinion.

I would have sustained the Appellant's second ground for review. Therefore, I respectfully dissent.